**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHNNY REESE III, | ) | No. ED CV 11-540-PLA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| ————————————————— | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on April 12, 2011, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on April 28, 2011, and April 29, 2011.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 7, 2011, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

II.

## BACKGROUND

Plaintiff was born on April 28, 1980. [Administrative Record ("AR") at 60-61.] He has a high school education [AR at 139], and past relevant work as a warehouse worker.  [AR at 127.]

On March 28, 2007, plaintiff applied for Supplemental Security Income payments, claiming an inability to work since February 16, 2007, due to injuries to his left leg and gunshot wounds to his head, left hand, left shoulder, and right underarm.  [AR at 60-61, 124, 135, 159.]  After his application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR 62-72, 75.]  A hearing was held on November 19, 2008, at which plaintiff appeared with counsel and testified on his own behalf.  [AR at 29-59.]  A vocational expert ("VE") and a third party witness also testified.  [AR at 44-58.]  The ALJ determined that plaintiff was not disabled.  [AR at 5-15.]  On May 6, 2009, the Appeals Council denied plaintiff's request for review.  [AR at 1-4.]  On June 18, 2009, plaintiff filed a complaint in this Court in Case No. ED CV 09-1049-PLA.  [See AR at 394.]  On April 28, 2010, the Court entered judgment for plaintiff and remanded the case back to the ALJ for further proceedings.  [AR at 394-403.]  On remand, a different ALJ held another hearing on December 17, 2010, at which time plaintiff appeared with counsel and again testified on his own behalf.  A medical expert, a VE, and a third party witness also testified.  [AR at 336-79.]  On January 27, 2011, the ALJ issued an opinion again finding plaintiff not disabled.  [AR at 327-35.]  This action followed.

III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

1  adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

2  1257.  When determining whether substantial evidence exists to support the Commissioner's

3  decision, the Court examines the administrative record as a whole, considering adverse as well

4  as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

5  Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

6  must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala,

7  53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

8

9                                              **IV.**

10                          **THE EVALUATION OF DISABILITY**

11          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

12  to engage in any substantial gainful activity owing to a physical or mental impairment that is

13  expected to result in death or which has lasted or is expected to last for a continuous period of at

14  least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

15

16  **A.     THE FIVE-STEP EVALUATION PROCESS**

17          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

18  whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

19  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

20  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

21  claimant is not disabled and the claim is denied. Id.  If the claimant is not currently engaged in

22  substantial gainful activity, the second step requires the Commissioner to determine whether the

23  claimant has a "severe" impairment or combination of impairments significantly limiting his ability

24  to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

25  If the claimant has a "severe" impairment or combination of impairments, the third step requires

26  the Commissioner to determine whether the impairment or combination of impairments meets or

27  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

28  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.

3

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since March 28, 2007, the date of the application. [AR at 329.] At step two, the ALJ concluded that plaintiff has the severe impairments of status post multiple gunshot wounds to his upper and lower extremities and head; cognitive disorder secondary to gunshot wound; mood disorder, not otherwise specified; rule out post traumatic stress disorder; cannabis abuse; and seizure disorder. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform "light work as defined in 20 C.F.R. § 416.967(b),"[2] except that plaintiff "is limited to carrying/lifting 10 pounds frequently, 20 pounds occasionally; standing/walking 2 hours in an 8 hour workday; sitting 6 hours in an 8 hour workday, with normal breaks; occasionally pushing/pulling and use of arm levers and controls with his left

---

[1]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]    20 C.F.R. § 416.967(b) defines "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

upper extremity; no foot controls with his left lower extremity; he can climb stairs and ramps but only less than occasionally; he cannot climb ladders, ropes, or scaffolds; no walking on uneven terrain; a hand held device is not required for ambulation but he should be allowed to use a drop foot brace and a cane for long distances; no work at unprotected heights, around flashing, strong or bright lighting or around strong odors; simple repetitive tasks with no interaction with the public; no tasks requiring hypervigilance; and no fast pace[d] work." [AR at 330-31.]  At step four, the ALJ concluded that plaintiff was not capable of performing his past relevant work.  [AR at 334.]  At step five, the ALJ found, based on the vocational expert's testimony and the application of the Medical-Vocational Guidelines, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform."  [AR at 334-35.]  Accordingly, the ALJ determined that plaintiff is not disabled.  [AR at 335.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ: (1) failed to properly consider whether plaintiff meets and/or equals Listing Section 1.03; (2) improperly concluded that plaintiff can perform certain jobs found in the Dictionary of Occupational Titles and failed to elicit an explanation from the VE as to whether there is any conflict between the ALJ's RFC determination for plaintiff and the jobs that the VE testified plaintiff can perform; (3) failed to properly determine plaintiff's RFC; and (4) posed an incomplete hypothetical question to the VE.  [Joint Stipulation ("JS") at 3.]  As set forth below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

## A.    ALJ'S FAILURE TO PROPERLY CONSIDER WHETHER PLAINTIFF MEETS AND/OR EQUALS LISTING SECTION 1.03

Plaintiff contends that he meets and/or equals the requirements to qualify for a finding of disabled under Listing Section 1.03.  [JS at 3-9.]

To meet or equal the Listing, plaintiff has the burden of establishing that he meets or equals each characteristic of the listed impairment.  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim.  To *equal* a listed impairment,[3] a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment ..."  Id. (quoting 20 C.F.R. § 404.1526) (emphases in original); see also 20 C.F.R. § 416.926(a) (An "impairment(s) is medically equivalent to a listed impairment in appendix 1 of subpart P of part 404 of this chapter if it is at least equal in severity and duration to the criteria of any listed impairment.").

Listing Section 1.03 requires a finding of disability for an individual who has had "[r]econstructive surgery or surgical arthrodesis[4] of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.03. Section 1.00B2b provides the following description concerning "What [the Administration] Mean[s] by Inability to Ambulate Effectively":

> (1) Definition.  Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. ...

> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to

---

[3]   The Social Security Administration refers to this as "medical equivalence."  See 20 C.F.R. §§ 404.1526, 416.926.

[4]   Arthrodesis is defined as: "the surgical fixation of a joint by a procedure designed to accomplish fusion of the joint surfaces by promoting the proliferation of bone cells."  Dorland's Illustrated Medical Dictionary, at 152 (29th ed. 2000).

1    walk independently about one's home without the use of assistive
     devices does not, in and of itself, constitute effective ambulation.

2

3    Id. at § 1.00B2b.  At step three of the five-step process, the ALJ determined that plaintiff's

4    impairments do not meet or equal any of the impairments in the Listing.  [AR at 329.]  Specifically,

5    the ALJ stated that "[n]o treating or examining physician has recorded findings equivalent in

6    severity to the criteria of any listed impairment, including Listing [Sections] 1.00, 11.00, [and]

7    12.00, nor does the evidence show medical findings that are the same or equivalent to those of

8    any listed impairment of the Listing."  [AR at 329-30.]

9         Plaintiff first argues that he meets or equals Listing Section 1.03's requirement of

10   "reconstructive surgery or surgical arthrodesis of a major weight-bearing joint" because he

11   "underwent surgery on February 16, 2007 for multiple gunshot wounds to both thighs and the left

12   and right leg," and "underwent another surgery on February 21, 2007 to his left thigh." [JS at 4-5.]

13   However, 20 C.F.R., Part 404, Subpart P, Appendix 1, Section 1.00F provides, in relevant part:

14   "[m]ajor joints refers to the major peripheral joints, which are the hip, knee, shoulder, elbow,

15   wrist-hand, and ankle-foot."  Thus, under Section 1.00F of the Listing, the "left leg" is not a "major

16   joint."  Moreover, plaintiff has not presented evidence that he has had surgical arthrodesis or

17   reconstructive surgery of any of the joints identified in Section 1.00F.  Therefore, plaintiff fails to

18   establish that he meets the characteristic of "reconstructive surgery or surgical arthrodesis of a

19   major weight-bearing joint."  Similarly, plaintiff fails to establish that his impairments equal this

20   characteristic, as he points to no symptoms, signs, or laboratory findings showing that his leg

21   surgery is "at least equal in severity" to "reconstructive surgery or surgical arthrodesis of a major

22   weight-bearing joint."  See Tackett, 180 F.3d at 1099 (citing 20 C.F.R. § 404.1526); see also 20

23   C.F.R. § 416.926(a).[5]

24   ─────────────────

25        [5]  Plaintiff's relies on Marcia v. Sullivan, 900 F.2d 172 (9th Cir. 1990), to argue that the ALJ's
     finding in this case was insufficient to show that he considered plaintiff's possible equivalence to
26   Listing Section 1.03.  This reliance is misplaced.  In Marcia, the Ninth Circuit held that where the
     ALJ failed to address medical evidence presented by the claimant in an effort to establish
27   equivalence, the ALJ's finding as to equivalence was insufficient.  See Marcia, 900 F.2d at 176.
     Here, plaintiff states that he "underwent surgery ... for multiple gunshot wounds to both thighs and
28                                                                                    (continued...)

In addition, plaintiff argues that he meets or equals Section 1.03's requirement of an "inability to ambulate effectively" because the ALJ determined that plaintiff's RFC to perform light work includes the following limitations: "no foot controls with his left lower extremity; ... no walking on uneven terrain; a hand held device is not required for ambulation but he should be allowed to use a drop foot brace and a cane for long distances." [JS at 5-7; AR at 330.] The ALJ's finding that plaintiff should be able to use a drop foot brace and a cane for long distances does not establish under 20 C.F.R., Pt. 404, Subpt. P, App. 1, Section 1.00B2b that he has "insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities" (emphasis added).  In addition, while the ALJ's finding that plaintiff cannot walk on uneven terrain may indicate that plaintiff is unable "to walk a block at a reasonable pace on rough or uneven surfaces," which could impact his ability to ambulate effectively (see 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00B2b), the Court finds that the inability to ambulate effectively alone is not sufficient to establish that plaintiff equals Section 1.03, i.e., plaintiff has not shown that he equals each characteristic of Section 1.03. Plaintiff does not meet or equal Listing Section 1.03, and remand is not warranted on this issue. See Tackett, 180 F.3d at 1099.

/

/

/

/

---

[5](...continued)
the left and right leg," and "underwent another surgery ... to his left thigh." [See JS at 4-5.] He has not presented any evidence of how his leg surgeries are medically equivalent to "reconstructive surgery or surgical arthrodesis of a major weight-bearing joint." Thus, plaintiff has not established that the ALJ's finding that "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, including Listing 1.00 ... nor does the evidence show medical findings that are the same as or equivalent to those of any listed impairment of the Listing[s]" [AR at 329-30], was insufficient. See Roberson v. Astrue, 2011 WL 1211483, at *3 n.3 (C.D. Cal. Mar. 30, 2011) (where the claimant did not present evidence of medical equivalence, her reliance on Marcia to argue that the ALJ failed to properly consider her equivalence to the Listing was misplaced).

**B.     ALJ'S FAILURE TO EXPLAIN HIS DEVIATION FROM THE DOT OR OBTAIN A REASONABLE EXPLANATION FROM THE VOCATIONAL EXPERT**

Plaintiff argues that "due to ... plaintiff's RFC limiting him to occasionally pushing/pulling and use of arm levers and controls with his left upper extremity, he would be unable to perform [the jobs of sewing machine operator, compact assembler, and film touch-up inspector] ... because such jobs would require frequently and/or constantly reaching using both of his arms." [JS at 15.] Plaintiff further contends that "[n]either the ALJ nor the VE articulated reasons for deviating from the DOT," and that the ALJ therefore erred in determining that plaintiff can perform these jobs. [JS at 16.]

"[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles." Pinto v. Massanari, 249 F.3d 840, 845-46 (9th Cir. 2001) (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).   The DOT raises a presumption as to job classification requirements. See Johnson, 60 F.3d at 1435.  An ALJ may rely on VE testimony that varies from the DOT description of how a job is performed "only insofar as the record contains persuasive evidence to support the deviation." Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997) (citing Johnson, 60 F.3d at 1435).  Moreover, "when a VE ... provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE ... evidence and the information provided in the DOT."  Social Security Ruling[6] 00-4p.  SSR 00-4p further provides that "[i]f the VE's ... evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." Id.  Nevertheless, the ALJ's failure to ask the VE about potential conflicts and obtain a reasonable explanation for any conflicts is harmless error where there is no actual conflict or where the VE has "provided sufficient support for her conclusion so as to justify any potential conflicts." Massachi v. Astrue, 486 F.3d 1149, 1154 n.19 (9th Cir. 2007).

---

[6]     Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

In his RFC determination for plaintiff, the ALJ found that plaintiff's ability to perform light work is limited to, among other things, "occasionally pushing/pulling and use of arm levers and controls with his left upper extremity." [AR at 330.]  At plaintiff's hearing before the ALJ, the ALJ asked the vocational expert to assume a hypothetical person of plaintiff's age, education, past relevant work experience, and with all of the limitations that the ALJ determined plaintiff has, including the limitation that plaintiff can only "occasionally push and pull and use arm levers and controls with his left upper extremity." [AR at 375-76.]  When asked whether plaintiff can perform jobs in the national economy other than his past work, the VE testified, in relevant part, as follows:

> Yes, there would be work.  Examples at the range of light would be sewing machine operator, light, SVP 2, the DOT of 689.685-118 -- there's one DOT in that group.  There are more than 16,000 light, unskilled sewing machine operators in the region or 190,000 nationally.
> There -- moving to sedentary, because other positions at the range of light was standing and walking only two out of eight, would potentially have odors.  So ... just going to sedentary.  Small items assembly, which is not a DOT number but a group of positions -- typically assembler items weighing less than one pound.  The Dictionary of Occupational Titles as a sample would be a cosmetic assembly [sic], 739.687-066.  There are over 2,000 sedentary, unskilled assembly positions in the region, 50,000 plus nationally.
> Or production inspector type positions -- again, inspecting items typically weighing less than one pound with a sample DOT of a circuit inspector, 726.684-050 -- more than 500 positions in the region with 10,000 nationally.  That's a sample of three.

[AR at 376-77.]  The ALJ did not ask the VE whether there was any conflict between her testimony as to plaintiff's ability to perform these jobs and plaintiff's limitations as set forth in the ALJ's RFC determination for plaintiff.  [See AR at 377.]  In his decision, the ALJ stated:

> [T]he Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with [plaintiff's] age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as sewing machine operator, light, svp 2, DOT 689.685-118, 16,000 positions regionally, nationally 190,000 positions; small item assembly -- DOT for cosmetic assembly is 739.687-066, sedentary, unskilled, svp 2, 2,000 positions regionally, nationally 50,000 positions; and production inspector -- circuit inspector DOT 726.684[]-050, sedentary, unskilled, svp 2, more than 500 positions regionally, and 10,000 positions nationally.

1
2

> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

3   [AR at 335.]  The ALJ therefore concluded that plaintiff can perform other jobs that exist in

4   significant numbers in the national economy and found plaintiff not disabled.  [Id.]

5       The jobs of sewing machine operator and compact assembler[7] require reaching

6   "frequently," i.e., one-third to two-thirds of the time.  DOT 689.685-118; DOT 739.687-066.  The

7   job of film touch-up inspector[8] requires reaching "constantly," i.e., two-thirds or more of the time.

8   DOT 726.684-050.

9       Plaintiff first argues that "due to ... plaintiff's RFC limiting him to occasional[] pushing/pulling

10  and use of arm levers and controls with his left upper extremity, he would be unable to perform

11  any of the jobs given by the ALJ ... because such jobs would require frequently and/or constantly

12  reaching using both of his arms."  [JS at 15.]  In so arguing, however, plaintiff conflates the

13  function of being able to "reach" with that of being able to "push," "pull," and "use arm levers and

14  controls."  "[P]ushing[] and pulling" are "primary strength activities," and are therefore "exertional."

15  SSR 83-10.  By contrast, a limitation on an individual's ability to "reach" is a "nonexertional

16  impairment," or an "impairment which does not directly affect the ability to sit, stand, walk, lift,

17  carry, push, or pull."  Id.  Thus, there is no conflict between the ALJ's finding that plaintiff is limited

18  to only occasional pushing, pulling, and use of arm levers or controls with his left upper extremity,

19  which are exertional impairments, and the demand that plaintiff be able to frequently or constantly

20  "reach," which is a nonexertional requirement.[9]  Moreover, the ALJ's RFC determination for plaintiff

21

22

23

24      [7]   DOT No. 739.687-066, referred to by the VE and the ALJ as "cosmetic assembler," is listed in the DOT as "compact assembler."

25

26      [8]   DOT No. 726.684-050, referred to by the VE and the ALJ as "circuit inspector," is listed in the DOT as "film touch-up inspector."

27      [9]   The Court therefore finds that the ALJ's determination of the frequency with which plaintiff can push, pull, or use arm levers and controls is irrelevant to the frequency with which plaintiff

28  must be able to "reach" to perform the three jobs the ALJ found he can do.

1  does not contain any limitation as to plaintiff's ability to reach.[10]  [See AR at 330-31.]  Therefore,

2  plaintiff's argument that he cannot perform the three jobs identified by the ALJ that call for constant

3  or frequent reaching, simply because plaintiff can only occasionally push, pull, or use arm levers

4  and controls with his left upper extremity, fails.

5          For this reason, plaintiff also cannot establish that the ALJ or the VE improperly failed to

6  "articulate[] reasons for deviating from the DOT."  [JS at 16.]  In his hypothetical question to the

7  VE, the ALJ included the limitation that the hypothetical person can only "occasionally push and

8  pull and use arm levers and controls with his left upper extremity."  [AR at 375-76.]  The VE

9  testified that such a person could perform the jobs of sewing machine operator, compact

10 assembler, and film touch-up inspector.  As there is no conflict under SSR 83-10 between the

11 limitations the ALJ found for plaintiff's left upper extremity and an individual's ability to reach

12 constantly or frequently, the VE's testimony that plaintiff can perform the three jobs does not

13 deviate from the DOT's description of the jobs' "reaching" requirements, but is consistent with

14 them.  Thus, the ALJ was not required to provide a reasonable explanation for relying on that part

15 of the VE's testimony.  See, e.g., SSR 00-4p ("If the VE's ... evidence appears to conflict with the

16 DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.") (emphases

17 added).  For the same reason, although the ALJ did not ask the VE whether any conflict existed

18 between the DOT and the VE's testimony that the three jobs can be performed by a hypothetical

19 person with all of the limitations the ALJ determined plaintiff has, that failure was harmless error

20 as to the issue of the jobs' "reaching" requirements.  See Massachi, 486 F.3d at 1154 n.19.

21

22          [10]   The Commissioner contends that there is no conflict between a DOT job description that

23 requires "the performance of manipulative functions," such as reaching, and VE testimony that
   such a job can be done by a hypothetical person who is only limited in his ability to perform such

24 functions as to one arm.  [See JS at 16-18.]  There is a split of authority as to whether there is a
   conflict between a DOT job description requiring some level of "reaching," and VE testimony that

25 a hypothetical person who is limited in his ability to reach as to one arm can perform that job.

26 Compare Marshall v. Astrue, 2010 WL 841252, at *6 (S.D. Cal. Mar. 10, 2010), Meyer v. Astrue,
   2010 WL 3943519, at *8-9 (E.D. Cal. Oct. 1, 2010), and Walls v. Astrue, 2010 WL 5672742, at *5

27 (S.D. W.Va. Dec. 20, 2010), with Fuller v. Astrue, 2009 WL 4980273, at *2-3 (C.D. Cal. Dec. 15,
   2009), and Diehl v. Barnhart, 357 F.Supp.2d 804, 822 (E.D. Pa. 2005).  Nevertheless, the

28 outcome in this action is not affected by this issue.

Moreover, plaintiff's objective medical record supports the ALJ's silence in his RFC determination as to any limitation on plaintiff's ability to "reach." The Commissioner defines "reaching" as "extending the hands and arms in any direction." SSR 85-15. Plaintiff has not pointed to any medical notes or reports indicating that he is limited in his ability to extend his arms and hands in any direction. Rather, the only two medical reports in the record evaluating plaintiff's upper extremities did not find that he had any such limitations. On July 12, 2007, consultative examiner Dr. Bunsri T. Sophon, an orthopaedic surgeon, performed a complete orthopedic evaluation of plaintiff and concluded the following as to plaintiff's upper extremities: "no deformity" in plaintiff's shoulders, arms, elbows, forearms, wrists, and hands; "no evidence of muscle atrophy or spasm" in plaintiff's shoulders, arms, elbows, forearms, wrists; and that the range of motion in plaintiff's shoulders, elbows, and wrists was "within normal limits." [AR at 266, 268, 270.] On July 19, 2007, a nonexamining physician completed a physical residual functional capacity assessment ("PRFCA") for plaintiff, in which the physician opined that plaintiff does not have any manipulative limitations, including in his ability to "reach[] in all directions." [AR at 275.] The ALJ stated in his decision that he assigned "great weight" to the opinions of both Dr. Sophon and the nonexamining physician who completed the July 19, 2007, PRFCA. [See AR at 333-34.] Accordingly, based on the absence of evidence establishing any limitation on plaintiff's ability to "reach," and on the opinions of Dr. Sophon and the nonexamining physician, there is substantial evidence to support the ALJ's implicit conclusion that plaintiff can "reach" frequently or constantly, and can therefore perform the jobs of sewing machine operator, compact assembler, and film touch-up inspector.

Based on the foregoing, the Court finds that there is no conflict under SSR 83-10 between the limitations the ALJ found for plaintiff's left upper extremity and his ability to reach constantly or frequently, and therefore plaintiff also has not established that the ALJ or the VE improperly failed to "articulate[] reasons for deviating from the DOT." Remand is not warranted on this issue. See Moncada, 60 F.3d at 523 (ALJ's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards).

/

/

**C.    ALJ'S FAILURE TO PROPERLY DETERMINE PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY**

Plaintiff argues that the ALJ erred by not including in his RFC determination for plaintiff certain "standard precautions for a person with a seizure disorder," such as "avoid[ing] extreme heat, no exposure to dangerous or moving machinery, no working around pools of water and no responsibility for the safety of others."  [JS at 19.]  The Commissioner contends that the ALJ reasonably determined plaintiff's RFC, but also that "even if [p]laintiff had proved the functional limitations he [contends that the ALJ improperly omitted from his RFC], those limitations would not preclude the jobs identified by the ALJ at step five."  [JS at 20-21.]

The Dictionary of Occupational Titles describes the job of sewing machine operator as follows:

> Tends machine that automatically stitches designs to decorate mattress covers and to hold padding in place: Places spools of thread on spindles and draws ends through guides, tensions, and needle eyes.  Inserts bobbin in shuttle and draws thread through slot in shuttle wall.  Clamps covering material and padding in frame and places frame in rack under sewing head of machine.  Bolts pilot pattern plate on platform beneath frame, using wrench.  Places pilot or guide bar extending from frame in guide channels of pilot pattern and starts machine.  May move pilot or guide bar by hand.  May attach framed cover to pulleys that draw it away from machine as cover is stitched, and guide cover under presser foot by hand to stitch design.

DOT 689.685-118. The DOT describes the job of compact assembler as follows: "Joins upper and lower halves of vanity compacts: Inserts pins in hinges to join halves, using fingers or tweezers. Attaches spring catch lock by pressing it into place with pinching tool.  Fits mirror on inside of cover."  DOT 739.687-066.  Finally, the DOT describes the job of film touch-up inspector as follows:

> Inspects and repairs circuitry image on photoresist film (separate film or film laminated to fiberglass boards) used in manufacture of printed circuit boards ... : Inspects film under magnifying glass for holes, breaks, and bridges (connections) in photoresist circuit image. Removes excess photoresist, using knife. Touches up holes and breaks in photoresist circuitry image, using photoresist ink pen. Removes and stacks finished boards for transfer to next work station. Maintains production reports. May place lint free

14

paper between dry film sheets to avoid scratching circuit images on film.

DOT 726.684-050.  The DOT further provides that exposure to extreme heat and moving mechanical parts in the job is "not present" in any of these three jobs.  DOT 689.685-118; DOT 739.687-066; DOT 726.684-050.

Plaintiff contends that "[t]he fact that plaintiff would have safety precautions due to his seizure disorder would clearly impact his everyday functioning in all work-related activities and his ability to perform other work such as the jobs [the ALJ found he is able to perform]."  [JS at 19.][11] Nevertheless, plaintiff fails to establish <u>how</u> the limitations of having to avoid extreme heat, exposure to dangerous or moving machinery, and working around pools of water, or that of not having responsibility for the safety of others, would preclude him from being able to perform the jobs of compact assembler and film touch-up inspector.  Indeed, the DOT states that exposure to extreme heat and to moving mechanical parts is "not present" in either of these jobs.[12]  DOT

---

[11]   Plaintiff argues that the ALJ  "should have incorporated all necessary seizure limitations in" plaintiff's RFC determination, and that he instead "omitted all seizure limitations."  [JS at 20.] However, plaintiff states merely that "[t]he standard precautions for a person with a seizure disorder <u>could</u> <u>be</u> to avoid extreme heat, no exposure to dangerous or moving machinery, no working around pools of water and no responsibility for the safety of others," and does not present any other limitations -- actual or hypothetical -- related to his seizure disorder. [JS at 19; emphasis added.]  Moreover, the only seizure-related limitation in the record assigned by a physician is an emergency room physician's February 5, 2010, directive of "no driving until cleared by neurology." [AR at 500.]  Thus, the Court addresses herein only those limitations that plaintiff <u>has</u> raised. Moreover, as the Commissioner points out, the ALJ did include in plaintiff's RFC "some prophylactic functional limitations that encompassed seizure precautions" [JS at 20], including "no work at unprotected heights, around flashing, strong or bright lighting[,] or around strong odors." [AR at 330-31.]

[12]   The Court notes that while the DOT description for the job of sewing machine operator also states that exposure to extreme heat and moving mechanical parts is "not present," it nevertheless includes the following description: "[t]ends machine that automatically stitches designs to decorate mattress covers ..." DOT 689.685-118.  However, even if a sewing machine operator is exposed to moving mechanical parts, and even assuming arguendo that plaintiff cannot be exposed to dangerous or moving machinery, the ALJ's conclusion that plaintiff can perform this job would still be harmless error given the Court's determination herein that the ALJ did not err in finding that plaintiff can perform the jobs of compact assembler and film touch-up inspector.  <u>See</u> <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless if it is (continued...)

739.687-066; DOT 726.684-050.  Moreover, the DOT descriptions for these two jobs do not indicate that water, let alone exposure to pools of water, is involved in either job, nor do they indicate that either job is supervisory or safety-related.  Id.  While the presumption raised by the DOT as to job classification requirements is rebuttable (see Johnson, 60 F.3d at 1435), plaintiff has not rebutted the presumption that an individual who has the limitations of not having responsibility for the safety of others and of having to avoid extreme heat, exposure to dangerous or moving machinery, and working around pools of water, would not be able to perform the jobs of compact assembler and film touch-up inspector.  Thus, the Court finds that even if the ALJ erred by omitting these limitations from plaintiff's RFC determination, the error would be "inconsequential to the ultimate disability determination," and therefore harmless.  See Stout, 454 F.3d at 1055; Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006).  "A decision of the ALJ will not be reversed for errors that are harmless."  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991)).  Accordingly, remand is not warranted on this issue.

**D.   ALJ'S FAILURE TO POSE A COMPLETE HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT**

Plaintiff argues that the ALJ's hypothetical question to the VE was incomplete because it did not contain the following limitations, which are "standard precautions" for an individual with a seizure disorder: "avoid[ing] extreme heat, no exposure to dangerous or moving machinery, no working around pools of water and no responsibility for the safety of others."  [JS at 23.]  As the Court determined supra that the ALJ's failure to include these limitations in plaintiff's RFC was harmless error, the omission of these limitations from the ALJ's hypothetical question to the VE likewise was "inconsequential to the ultimate disability determination."  Thus, even if the ALJ erred by not including these limitations in the hypothetical question posed to the VE, such error would

---

[12](...continued)
"inconsequential to the ultimate disability determination").

1  be harmless.  See Stout, 454 F.3d at 1055.  Remand is not warranted on this issue.  See Burch,

2  400 F.3d at 679.

3

4  **VI.**

5  **CONCLUSION**

6      **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative,

7  remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

8      **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

9  Judgment herein on all parties or their counsel.

10      **This Memorandum Opinion and Order is not intended for publication, nor is it**

11  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

12

13  DATED: January 17, 2012

                     /s/ Paul L. Abrams

14                       PAUL L. ABRAMS
                     UNITED STATES MAGISTRATE JUDGE